Case number 20-5356, United States of America v. All Assets Held at Credit Suisse, Currency Limited, Account Numbers 41610 and 41950, Suisse Currency Limited, Account Numbers 41610 and 41950, in the name of Cementio Limited, as trustees of the Balfour Trust, last valued at approximately $147.9 million in United States et al., for the appellate United States of America. Good morning. Good morning. It's an honor to be here. Good morning. Just to start, two seconds of background. This is a forfeiture case that with proceedings both in Guernsey and other countries as well as here in the United States. It's a fairly limited narrow appeal that we have in front of the court today. And that relates to the restraining order that was entered by the court at the beginning of the case here in the United States. And whether or not that order entered can act as a foreign anti-suit injunction barring litigation for proceeding in Guernsey. One of the things that's really interesting about this appeal is in the brief filed by the United States in response to our appellate brief. For the very first time, the government admits that if there were independent proceedings in Guernsey, then Mr. Lazarenko would be permitted to litigate in Guernsey. That is on page 38 and 39 of their brief. Well, we were surprised by that admission because it's very clear that there are in fact, there is in fact, proceedings in Guernsey. Could I ask you exactly what has happened in Guernsey in the last six years? We know that Lazarenko filed something in Guernsey in 2015 seeking to lift the Guernsey stay. And then we know this anti-suit injunction was generated in the DDC here. But what, if anything, has the Guernsey court done in response to Lazarenko's 2015 filing? We were, we had correspondence with the Department of Justice regarding the department's view that the filing in Guernsey violated the restraining order. We didn't think it did. Our application filed there. We don't think Guernsey did either because they issued a summons in the case in Guernsey. But we agreed with the Department of Justice that we would ask our lawyer in Guernsey to stay. That application allow us to proceed before the district court to get clarification. Okay, so it's been stayed at your request. On hold, waiting. And how much, can you just tell us at this point how much money is in this, the Balfour Trust? Yes, it's approximately $180 million. So can I just ask you, I'm struggling to understand your position as to why you don't think that activity in Guernsey, the kinds of activities that you all undertook, would violate the restraining order. Yeah, so I think I need to, to say that the application that we filed earlier is different than what we would do now. What's been clear is that at some point in time, this case in the United States will come to an end. If the United States gets a judgment, it has to go to Guernsey and try to see if the Guernsey authorities will honor that judgment or to what extent they will enforce it. So litigation in Guernsey has to go forward at some point. What we would like to do is go to Guernsey and have a determination made under Guernsey law what is forfeitable under Guernsey law. Why? Why do you want to do that now? Because we have to do that anyway. This case is... But what difference is, this is abuse of discretion. The district judge says, I hear your motion, I know that you would like to do that, but I'm saying no, let me go ahead and finish my proceeding. So what, why do you want to do that under these circumstances? Yeah, I mean, there's certain... Let me just modify that question slightly, if you don't mind. Why is it an abuse of discretion for the district court to have said no? I'm sorry, I didn't hear. Why is it an abuse of discretion? It's not... I mean, as Judge Jackson says, it's clear what you want to do, but to prevail here, you have to show that Judge Friedman's denial of your motion was not just... was an abuse of discretion, right? So you need to make your argument in those terms. Yeah, well, we do think it was an abuse of discretion. But why? That's what I want to know. Not just that you disagree with him. Why was it an abuse of discretion for him to decide the case the way he did? Well, because... Because we're not reviewing this, DeNoble. You can't just stand here and make an argument that this is what you want to do and you think it's better. You have to convince us that the district judge abused his discretion in denying your motion. Well, we would argue it's abuse of discretion when the case law is clear that you can't enter. We have good principles of comedy here. We also have whether there's a statutory authority. Well, the government says you waived it. Your statutory argument. Yeah. What do you mean, yeah? They did. That's their argument. They said it's waived and I didn't see any place in your brief where you really raised it. Yeah, well, with regard to waiver, anytime a lawyer sees waiver in a brief, your hair tickles on the back of your neck. And then you realize... What did you just say? I said anytime you see the word waiver in a brief, a lawyer gets nervous. Right. Of course, I did. And then you see it's just a sentence and you say, okay, it's just a sentence, but you still want to look at it. Okay. And clearly here, at multiple points in time, we raised the specific 983J issue with the district court. Tell me the best... Tell me your best point right now to the place where you think you most clearly raised it for benefit of the district court. Sure. The most clear example would be docket number 17... Oh, let me see here. Docket number 741. Docket 741? Yes. And what is it? We filed a... After the RJR Nabisco case came down from the Supreme Court, we had a pending motion before the district court regarding specifically the extraterritorial reach of what the district court could do or not to. And the district court said it did not want to issue any rulings regarding extraterritorial reach until after the Supreme Court ruled in RJR Nabisco. That docket number 741 is our specific supplemental brief addressing the extraterritorial reach or how RJR came down on interpreting statutes and whether or not they have extraterritorial reach. So that issue was clearly raised before the district court. The district court ruled it did not... But I'm sorry, if I look at docket 741, am I going to see arguments about 938J? I thought that's what... I guess I'm confused too. Yeah, I mean, it came up in various different contexts. But so there's been much litigation district court regarding what's extraterritorial or not. You know, which statutes, you know, what can be applied extraterritorially or not. With regard to 983J, we dropped a specific... I mean, the court had already ruled on extraterritorial application. We've dropped a specific footnote in our brief regarding the restraining order in which we sort of re-raise the extraterritorial issue. Okay. So can I get back to the question that I was sort of trying to get at, which is, even if we are deciding whether the district court was right or wrong, sort of in his determination about letting you go, which I take Judge Tittle's point that we're really not doing that. But let's assume we are. What is it that you get out of going back and doing what it is you want to do now? Why are you saying I need to go to Guernsey in this moment? Yeah, there are two reasons. One is we'd like to be heard on the merits somewhere. That's number one. Number two, the case has been pending for 18 years. This case isn't going to end for years to come. The Guernsey trust at $180 million isn't growing because it's not... It's a trust. Aren't they managing it? They're not. They're basically just getting an interest rate. Why does the name of the case say $125 million? Because at some point early in the case, it was invested appropriately as trustees would invest, and they switched, we think, after the restraining order, the trustees. But understand, because of the restraining order, we can't even contact the trustees and say, how are you investing? Can you change your investment? You don't control that anyway. I thought it was an irrevocable trust. I thought the trustees get to make the decision. So even if you could contact them and say, do it some other way, don't they have the discretion to do what they want? Two-part answer. One is, under US law, how a trust is titled is not determinative of what kind of trust it actually is. And it's our view, this wasn't so much briefed a little bit, but this is not... We don't believe it's actually an irrevocable trust by US law. And the IRS would certainly take the position, it's not an irrevocable trust, that Mr. Lazzarampo controls its trust based on the way it's set up. So although it's titled irrevocable trust under US law, and certainly the way the US taxing authorities view it, it's not irrevocable. Okay, so if we disagree, let's say we hear your arguments right now as to why you think it's important to allow you to go forward. If we disagree with you, do you lose? If you disagree with the reasons? Yeah, if we agree with Judge Friedman and think that's not a good enough reason, are we done here? I don't think so, because the other issue is the Royal Court of Guernsey. The Royal Court of Guernsey started proceedings. The Royal Court of Guernsey issued a summons. The Royal Court of Guernsey has an ability, or should have an ability, to weigh in on the issues that we've raised in our brief. Was the case started in Guernsey based on misrepresentations? The government says no, we say yes. That's for the Royal Court of Guernsey to determine. Wait, but why is that an answer to what Judge Jackson just said? I don't understand that. I'm sorry? Why is that an answer to what Judge Jackson just asked you? Maybe I misunderstood you, but... You just gave yet another reason why we should allow you to go to Guernsey, assuming we were making the decision in the first instance. I'm asking you if we disagree with you about that. If we don't think giving the Royal Court of Guernsey the opportunity to weigh in on this is important, or allowing you to contact the trustees to make some recommendations about how to handle the trust is important. If we disagree with your argument, is that the essence of your appeal and we're done? Well, obviously, if the court disagrees with all of our arguments, then we will be done. I guess I'm trying to set up and understand what it is you want us to do. Do you want us to make the determination, or are we looking at whether Judge Friedman abused his discretion in deciding that the arguments you've made right now, he's going to say, no, I'd like to keep going here, and no one touched the money? Yeah. Well, first, we're not asking Judge Friedman's restraining order to be altered at all with regard to preventing dissipation or any of those things that are in his order. The only thing that we're talking about in this order, it's very limited. They are interpreting any language in his order, like any other action, to include a foreign anti-suit injunction. So we didn't understand that to be in the order. The Guernsey authorities didn't understand that to be in the order. We filed an application. DOJ says that's a violation. We asked Judge Friedman, can you clarify this? Because we didn't think it was a violation. He thought it was a violation. He thought it was a violation. He didn't think there was any doubt about it. He thought it was a violation. Yeah, but I just said he didn't think there was any doubt about it. I mean, his language is pretty strong. He said it's beyond, what did he say? He said, he said, he said, he says it's, he says it's, he says, he says, he says, the Lazarenko now contend it is Guernsey application by which he asked. He says it strains credulity for Lazarenko to now contend it is Guernsey application, et cetera, et cetera. Strains credulity. That's right. And that application was a broader in scope. I mean, we're, we weren't asking that application, first of all, just to get a determination on Guernsey law, what's forfeited under Guernsey law. It was a little broader in the application. That's not what we're asking for now. Okay, so what, is it your position that a district judge like Judge Friedman, who has an NREM proceeding before him, cannot issue an order that prevents parties from engaging in litigation that would potentially deplete or do something to the assets that are under consideration in his proceeding? That's your position? It's, it's a little nuanced because what happens here is, regardless of the order of the proceedings, if the proceedings go all the way to judgment here in the United States with no litigation in Guernsey whatsoever, he has, Judge Friedman has the jurisdiction to do that. We're not questioning that. What happens then, as Judge Friedman has said, the effectiveness of that when it applies to Guernsey law. It's the effectiveness. He didn't just say that that's the law, but fine. That means we have to go to Guernsey eventually. Right. My question is, an order in the interim that he issued that says you can't go to Guernsey now, why is that abuse of discretion against the law or anything else? Yeah, well, first of all, we say it's abuse of discretion against the law because the law is clear about the very restrictive ability to enter a foreign anti-suit injunction. That law is, you know, we- Okay, just assume for a moment, we think we can figure that one out. Let's assume we agree with the government that it's either waived or you're wrong. Now, continue. That you agree that it's waived or- Or that you're wrong, that the district court does have the statutory authority. Now, what's the basis for an abuse of discretion argument? So, the court is ruling that 983J gives the authority to the court to issue an anti-suit injunction. Yeah, assume we think that's the case. We'd probably lose it. We'd probably lose. Yeah. Okay, thank you. Can I ask you a couple of questions about timing? So, on the front end of the sequence, United States went to Guernsey and asked for assistance with regard to property located in Guernsey. And the Guernsey court entered the restraining order. And it said, very specifically, any person affected by the order could apply for a discharge. So, suppose I think it would have been troubling to prevent Lazarenko from doing that in 2004, 2005, whatever, as permitted by the Guernsey court. That didn't happen. The proceedings in the United States, they went on for a decade. And Judge here is in the middle of all that. And then a decade in, Lazarenko says, oh, but now I want to go back to Guernsey mid-proceeding. Why doesn't the comedy analysis change very fundamentally? Well, the Guernsey court says, you can come challenge this order if you want. You wouldn't normally understand that to mean, but if you don't, go litigate somewhere else for a decade and then come back then. That's a very strange notion of comedy. Yeah, I think it's unclear how the Guernsey court will, we don't know how the Guernsey court will address or react to that delay. Is there any reason to think that under Guernsey law, a general statement like that saying, here's an order and come challenge it if you want, means come back a decade later in the middle of litigation elsewhere. Well, no, I don't know. I don't want to guess how the Guernsey court will react. The thing that we know is Guernsey court is not familiar. It hasn't been advised as to, for example, how its case started. And it has not had the opportunity to weigh in on Guernsey law, the forfeitability of the assets under Guernsey law, which it has to do at some point. All right, so let me ask you, so let's go to the back end. But another timing question, which is, you want to litigate two issues in Guernsey. One is whether the original 2004 order was procured improperly. And the other is the forfeitability of the trusts under Guernsey law, correct? Correct. Is there any reason why you can't litigate those issues at the conclusion of the BBC proceedings in the context of enforcement in Guernsey? Well, we have, the answer is probably yes. We have witnesses who are dying in this case. We had a primary witness who died last few months. The ability to litigate in Guernsey is going to be compromised by more delay. Did you make that argument to Judge Friedman, as he decided whether or not to allow you to go off to Guernsey? We did make the argument to Judge Friedman regarding, we have a number of dispositive motions pending before Judge Friedman, including the fact that we don't believe the government has admissible evidence to prove his case, the fact that witnesses are dying and have died. All of that is before Judge Friedman, and we have not had rulings yet on those motions. No, I mean, did you make it in the context of the decision that we're being asked to review today? I don't think that those specific arguments regarding, you know, witnesses dying, that was not made within the context of the 983J specific motion, no. But it's definitely been before the lower court, he's aware of it and has ruled on it. But there, you know, the problem we have in this case is it's going to be literally years before this comes to completion. Mr. Lazarenko is not a... Judge Friedman knew that, right? He knew that. Judge Friedman controls his docket. He knew that, and he denied your motion. Yes, he denied the motion. Unless either of my colleagues have any other questions. Just one more, is the forfeitability of the Guernsey Trust under Guernsey law at issue in the DDC? Judge Friedman has decided he doesn't want to weigh into that, he's going to wait for the Guernsey to decide that. Oh, so there's no, there won't be a race judicata problem. Your concerns with litigating on the back end are not legal ones about preclusion or not, these arguments not being cognizable in enforcement. They are practical ones about witnesses being unavailable and such. Um, there, it's hard to predict. There may be issues for which collateral estoppel or issue preclusion or race judicata apply, but it really depends on how the litigation would go forward in Guernsey, how the Guernsey court would rule. The judge here doesn't want to get into the forfeitability issue under Guernsey law. That's correct. Okay, that's all I have. Okay. Thank you for your time. Yeah, we'll hear from the government now. Um, Mr. Noel. Thank you, Judge Tatel, and may it please the court. Andrew Noel on behalf of the United States. Given this morning's presentation, I intend to focus on the merits of Lazzarenco's appeal, although I welcome any questions the court might have about the daughter's pending motion to intervene, which we've addressed in our brief. As to the merits of the appeal, the district court acted well within its discretion in maintaining a restraining order in this forfeiture action to preserve the availability of the defendant assets through judgment. That order is expressly authorized in 18 U.S.C. Section 993J, and continuing the restraint here accords with the statute's text, structure, and purpose. And under these circumstances, where the restraint that Lazzarenco seeks to challenge in Guernsey arose only out of and is intended to serve protection of the U.S. action, we don't believe that that restraint presents a foreign anti-suit injunction concern. It's not a parallel proceeding. But even if you thought that the precedent relevant to anti-suit injunctions is informative here, we think that the restraining order below is clearly intended to protect the district court's ability to exercise its jurisdiction and serves important U.S. policies. Why would it have to be a parallel proceeding in order for the anti-suit injunction analysis to apply? I mean, it seems to me that it's at least connected. It's an ancillary kind of thing. And he wants to go now. Judge Friedman is saying no. So why isn't that the same kind of thing? I mean, right? Why isn't that the same kind of thing? I understand Your Honor's question. And the best I can describe it is that the concerns that motivate the anti-suit injunction precedent is about preventing a foreign country from exercising its own prescriptive jurisdiction over the same case in controversy, where there's two competing sovereigns seeking to apply their law to dissolve a dispute. And that's simply not what we have here, at least with respect to the restraining order. I want to make a specific response to both your question, Judge Jackson, and Judge Katz's question about why it doesn't make sense to go now to kind of preterm at the enforcement question in Guernsey. And the reason for that is irrespective of whether the court or the foreign government nation where the property currently sits would enforce this forfeiture judgment to the extent we receive one. That doesn't undermine the validity and importance of the forfeiture judgment. Because if, say, Guernsey did not enforce the judgment, as soon as Lazarenko, his daughters, or anyone else moved the funds, say, to the United States, for example, with the actual forfeiture judgment, we could then go enforce it in a U.S. court where the funds now sit. I don't know if that helps you or hurts you with respect to the injunction suit point. In other words, to the extent that a foreign court's judgment concerning this property, these assets, in its jurisdiction has some impact or could have some impact, don't we have the same kinds of comedy concerns that animate the anti-injunction suit, that we don't want another court, we want other courts in other countries to feel comfortable going ahead and allowing people to litigate, even though we are litigating as well? Yes, Your Honor. And I think that's the reason why we don't dispute that once there is a judgment and there are enforcement proceedings in Guernsey, at that point, to the extent Guernsey law gives Lazarenko an interest to appear there, we don't dispute that he'll be able to do so. What he's trying to do here is to bring arguments about the enforcement or the eventual enforcement to the Guernsey court to lift a restraint that's just freezing the assets in place. He's essentially trying to proxy the enforcement question into the restraint proceeding. All we're saying is, to the extent that the question is whether the district court abused its discretion in not allowing him to go contest the restraint that's meant to keep the status quo and preserve the assets, that's not an abuse of discretion, and it won't pre-determine his ability to contest enforcement in Guernsey, raising the same arguments we wish to raise now, at a later point, once the district court has determined there is a forfeitable property here. And the importance for that is, to the extent that the Guernsey restraint is lifted now, we have real concerns, and I think the district court had real concerns, that Lazarenko could attempt to cause, or the trustees, who are actually the ones restrained, could take some action that could cause dissipation of the assets. And because civil forfeiture depends on the specific identity of the assets, we can't really unwind that at the back end. It's really a concern to make sure that the assets are preserved. Now, I do want to respond to my opposing counsel's point about our claimed change in position, where we said if there were independent proceedings in Guernsey, we have conceded that he might be able to appear there. What we said in our brief on pages, I think it was 37 and 38, is if there were independent forfeiture proceedings, whereby Guernsey, as a sovereign, was seeking to forfeit the funds to itself, presumably Lazarenko could seek to participate in those, and that's what Judge Friedman considered at the same time he considered the request to modify the injunction as to the Guernsey proceedings, and said, yes, Lazarenko can go to Antigua and can contest Antigua's attempt to forfeit the funds to himself. But to the extent he receives some of those funds in settlement, or otherwise gains access to them again, those funds will then still be subject to the U.S. restraining order. And we are not saying that he can't later at the enforcement stage participate, or if there was actually an effort by Guernsey to forfeit the funds to himself, he can't participate. What we're saying is he can't attempt to lift the restraint that exists solely because the Guernsey court has chosen to enforce the restraint that the district court has put in place. It's interesting because this was sort of my question to him from the beginning, which is, is that what he's trying to do? Why is he going to Guernsey? Is it because he's attempting to lift the restraint in effect by getting his hands on the assets, or as he suggested at one point, or many points in his brief, just to litigate kind of in the ether this idea of whether or not at the end of Judge Friedman's day, he would be able to get the assets should that be the legal ruling that Judge Friedman gets. Do you understand what I'm saying? I do, but I think his arguments as to the latter, as to the fact that he thinks Guernsey wouldn't enforce this judgment, which we dispute, obviously, the Guernsey court has chosen to do at the end of this case, but if he's correct, he wants to then lift the restraint in the light of the fact that Guernsey would not ultimately enforce the judgment. And we think that raises a real risk of dissipation. Now, as to the other possible arguments I just heard referenced today about why they would seek to go to Guernsey, whether it be because there's an investment issue about how the funds are being managed, or the kind of delay in prejudice arguments, those are not arguments that were brought before the district court here as specific reasons to modify the restraining order, and I would point the court specifically to appendix page 56, where the restraining order says that an individual can't modify or seek to take action that would affect the value or availability of the funds without request to the district court and notice to the government. So it's possible that if Lazarenko's sole concern is we don't think that the trustees are managing the funds correctly, but we don't want to take them, we just want them to pursue a different strategy, you know, I don't want to prejudge our opinion on that, because I think there are, you know, if an aggressive strategy might well affect the value of the funds, but you can certainly ask the district court to consider the possibility that they could bring some type of declaratory judgment action or specific action as to the investment of the funds that would not alter, you know, the value or availability of the funds or raise the same risk of dissipation. So that's just not, if you look at the paragraph, I'm sorry, Judge Katsas. All right, no, are you done with that? I was just going to say, look at 1309. There's a paragraph that says specifically what the modification Lazarenko was asking for that's on appeal here, and he asked to be able to go to Guernsey to attempt to lift the restraint on the Balfour Trust assets, and that's not what he argued. I'm sorry, what's the citation for that? Docket 1309, which is the motion to modify the restraining. Thank you. What do you do with the fact that the Guernsey court, on the front end of the case, this is not enforcement. This is when they enter the freezing order. They say very explicitly that any person affected by this order can apply for a discharge. Yes, sir. Isn't it a pretty aggressive intrusion on Guernsey sovereignty for district court in the United States? I mean, this property is in Guernsey. The district court's orders here aren't worth the paper they're printed on unless the United States. They go to Guernsey for the freezing order. The Guernsey court says, yes, we'll freeze the order, but people who don't like that can come back and seek modification. Isn't it an extraordinary intrusion on Guernsey sovereignty for a court in the United States, given all of that, to say, no, no, you cannot go back and seek to have that order modified? So I don't think so, Your Honor, for three reasons. And I don't think it presents the type of comedy concerns that I understand you to be referencing. And I just say that the district court expressly addressed this in the 2015 order, where this was raised to Judge Friedman specifically, the fact that Guernsey had presented this pro forma order to Lazarenko. And the court said, look, the proceedings in Guernsey are just freezing the assets in service of the U.S. action. And it's not an attempt for Guernsey to exercise its own sovereign authority over these funds. And so the fact that Lazarenko has been offered the opportunity to come contest it doesn't raise a comedy concern or affect my, the district court's ability to, you know, my authority over Lazarenko. And I'd also emphasize that the- No. Sorry, go ahead. No, but the Guernsey court has decided, decided to cooperate with U.S. enforcement, but subject to this condition. You know, it might be hugely important as a matter of Guernsey due process that whatever, someone subject to a freezing order has a day in court or an appeal. Well, the second point I'd make, Your Honor, is if you look specifically at the Guernsey order, I don't have the site in front of me, but it's in the appendix. The order itself only purports to restrict Credit Suisse and Bank Julius Baer, the two banks and custodians. It doesn't actually restrict in any way Lazarenko. Now, we assume that the court sent him the order to say he's, quote, affected by the restraint because he's the individual for whom the underlying conduct is alleged to have been criminal. But I additionally don't think, you know, beyond the comedy point I just made, that there's actually kind of prejudice to Lazarenko to the extent the order itself is not imposed against him under Guernsey law. Yeah, and there's a lot of question about the rights of the settler vis-a-vis the trust, the rights of the beneficiaries vis-a-vis the trust. I get all that. But, Your Honor, all of that, I mean, this seems to prevent, you know, there is some person, there is some person who has the right kind of interest in the trust whose actions are restrained, who, according to the Guernsey order in 2004, has rights under Guernsey law to come back and challenge that restraining order, but can't do it. It's the district court. All I would say is I think the trustees of the current custodians may have that right, but the order specifically allows them to continue to invest the funds and otherwise manage the funds so that they are, you know, properly controlled. And as to my knowledge, the trustees have not come to Guernsey and sought to, you know, raise an issue with the restraining order. And is there any reason to believe that any Guernsey interest in getting this resolved in some way couldn't take place on the back end once the United States, in this context, is done? No, Your Honor. I think to the extent the arguments are about whether Guernsey law will recognize the forfeiture judgment here, which is, I think, the essence of Lazarenko's claims, that question will be resolved at the enforcement stage. But again, without a judgment from the U.S. court, there's a risk that the assets can be dissipated before a judgment can be reached here. And that is a concern. But I don't think it prejudices the ability for Guernsey, when it is asked to enforce the judgment, to make a determination under its own sovereign law, whether it recognizes this type of action on these facts in enforcement. But again— What do you do with what he says in his reply brief? He says, even if he prevails under Guernsey law, in other words, even if he's allowed to proceed under Guernsey law, and I'm quoting, he will still be bound by the restraining order until and unless modified by the district court. That's what he says in his reply brief. So, Your Honor, let me take two issues with that. I'm not sure the basis for that assumption, because if the district court's order is lifted, I'm not sure what legal basis the district court would have to restrain him. And in particular, if this court were to accept—this goes to Judge Jackson's argument about the can never be—that he is a third party, which we dispute. But if third parties can never be restrained by 983J because of Rule 65, or if where there's foreign assets, notwithstanding 28 U.S.C. 1355, which really gives jurisdiction over assets held abroad, if a restraint nevertheless functions as an anti-suit injunction, accepting either of those two arguments, I think would mean the district court has no authority to restrain Lazarenko here. So, I don't understand the splicing that he tries to do in his reply brief about, oh, you can lift it as to allowing me to go litigate concurrency, but I'll still, in some other capacity, be bound by the district court's restraining order. So, unless the court has any other questions, I'm happy to see— Judge Katsas, you okay? All right. Thank you. Thank you, Your Honor. Let's see. Mr. Stassen, you used up all your time. You can have two minutes. Thank you for that indulgence. Real quickly on waiver, the one thing I forgot to mention was 983J was mentioned in our 2016 clarification motion in the reply brief at page 4. I think that last little colloquy is really important because Pavel Lazarenko is in the United States. He is subject to the restraining order that Judge Freeman issued. All of the restraints that are in that restraining order apply to him, including he cannot dissipate, he cannot move the assets, he cannot do anything with those assets. Even if we litigate in Guernsey and the Guernsey court says, under Guernsey law, let's say 50 percent of the assets are non-forkable under Guernsey law, we can't do anything with that—what we have to do is take that Guernsey order and bring it back to Judge Freeman and work through the issues of what happens. We're not asking for the entire restraint to be lifted, as Mr. Knoll just implied. That's not what we're asking for. All we're asking is for, in his order, where it says any other action that no party can take, any other action that would diminish the asset, any other action should not include litigating the problem. I guess I don't appreciate the distinction that you're trying to make. So, you seem to be suggesting that you are okay with the part of Judge Freeman's order that says you can't move the assets, take the assets, or anything else. What you're not okay with is the part of Judge Freeman's order that says you can't take any other action to essentially affect that same result, because to the extent that take any other action means I'm going to keep you from going to Guernsey and letting them give you permission to move, steal, or take the assets, then we've got basically the same thing. It's a distinction without a difference, right? Except that we're still subject to the U.S. order. So, we can't move. Even if Guernsey says we can move it, we can't because we have Judge Freeman's— Then why go there? This is my very first question. Yeah. If you're still restrained, then what difference does it make? Why do you care so much about going to Guernsey? Judge Freeman may realize, as Judge Pazza said earlier, the judgment he issues is only good. It's just a piece of paper until the Guernsey authorities weigh in. Judge Freeman may want to know that the Guernsey authorities say 20 percent isn't foreclosed under Guernsey law. That may affect the trial. He says I don't want to know. You asked him that, and he said I don't want to know. Well, we don't know what the ruling of the Guernsey court would be. That's the problem. We would like to have that. We'd like to have that opportunity, and we'd like to give the Guernsey court the opportunity. So, I'll return to my very first question. I understand that, and maybe you're right, but why was it an abuse of discretion for Judge Freeman to say no? We say it's an abuse of discretion because the interpretation of the order that any other action includes anti-suit is an abuse of discretion. Okay. All right. Anything else? Thank you for your time. Thank you. The case is submitted.
judges: Tatel, Katsas, Jackson